UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD M. JOHNSON, SR. | : NO. 300CV01566 (DJS) |
| V. | : |
| JOSEPH GANIM, RONALD RAPICE<br>AND CITY OF BRIDGEPORT | : AUGUST 11, 2005 |

### DEFENDANT RAPICE'S RULE 50(b) MOTION FOR JUDGMENT AFTER TRIAL

I.  INTRODUCTION

The defendant Ronald Rapice moves for judgment after trial on the following grounds:

1. As stated and argued in defendant's Rule 50(a) motion, judgment should enter on behalf of the defendant because there was no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff in this case.

2. Under the cases of _Pickering v. Board of Education_, 391 U.S. 563 (1968); _Jeffries v. Harleston_, 52 F 3d 9 (2nd Cir. 1995) and _Johnson v. Ganim, et_

1

al, 342 F.3d 114 (2nd Cir. 2003) judgment should enter on behalf of the defendant.

3. The finding of punitive damages should be vacated because there is no evidence to support such a finding.

4. The defendant Rapice is entitled to qualified immunity.

## II.   DISCUSSION

### A. As a Matter of Law, Judgment Should Enter for the Defendant Rapice

#### 1. Standard of Review

It is submitted to this Court that under Federal Rule Civil Procedure 50 (b)(1)(C) judgment, as a matter of law, should enter for the defendant Rapice because the plaintiff did not submit evidence to prove his Section 1983 claim. Rule 50 permits a district court to enter judgment as a matter of law against a party on an issue where "'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Nadel v. Isaksson, 321 F.3d 266, 271-72 (2nd Cir. 2003). The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed.R.Civ.P. 56 Id. at 272. A district court must deny a motion for judgment as a matter of law unless, viewed in the light

most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Id.*

### 2. The Plaintiff Failed to Present Evidence to Sustain His Claims

In this case the plaintiff's claim is brought pursuant to 42 USC δ 1983. Specifically the plaintiff claimed that the defendant Rapice violated his First Amendment right to free speech when after the plaintiff wrote the January 7, 1999 letter Rapice suspended and then terminated him. As this court instructed the jury, in order for the plaintiff to be successful on his claims plaintiff must have presented evidence that the plaintiff's speech was a motivating factor in the adverse employment action taken against the plaintiff. (See Court's Jury Charge *Johnson v. Rapice* 3:00CV1556 (DFM)). The plaintiff was required to prove that his speaking out against the city administration on matters of public concern in the January 7, 1999 letter was a substantial or motivating factor in Rapice's action to take action against him. *Id.* The court further charged that the plaintiff's protected speech was a substantial or motivating factor in the defendant's decision to take adverse action

3

against him if it played a substantial part in the actual decision to take action against the plaintiff. A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly "by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Cobb. et al v. Pozzi, et, al* 363 F. 3d 89, 108 (2004). In this area, courts have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. Instead, a plaintiff must produce "some tangible proof to demonstrate that [his] version of what occurred was not imaginary." *Id* quoting *Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994)).

In this case the plaintiff has failed to produce any evidence that Rapice suspended and then terminated the plaintiff because the plaintiff was critical of the city administration. When specifically asked under cross examination what evidence he had that Rapice acted because of the political content of the letter, plaintiff's proof was that he was a republican Ganim was a democrat and it was a politically motivated ploy. It is submitted to this Court that this testimony does not constitute evidence that Rapice retaliated against plaintiff because of the speech. Moreover, plaintiff admitted that he has no evidence that Rapice and Dr. Charles Opshal, who

performed the independent medical exam on plaintiff, were in collusion with each other as he claims and the only "evidence" proffered by the plaintiff that Rapice retaliated against him was because of Rapice's refusal to consider Dr. Stenifeld's report and opinions on the condition of Johnson. It is submitted to this court that such is not sufficient evidence to support plaintiff's claim, and even if it were, there is no disputed fact that Rapice did take into consideration Dr. Steinfeld by reviewing the February 9, 1999 letter from him and speaking with him on the telephone. Plaintiff's claim here is that Rapice showed animus towards him by not totally disregarding Dr. Opshal's findings and going along with whatever Dr. Steinfeld stated no matter how deficient. This court must remember that Rapice testified that after reviewing the February 9, 1999 letter from Dr. Steinfeld and speaking to him on the phone he learned that Steinfeld's treatment of Johnson had been sporadic and that he never performed the same tests on Johnson that Dr. Opshal performed. (See Plaintiff's Exhibit 7a February 9, 1999 letter from Steinfeld which states treatment was "sporadic"). It cannot be reasonably argued that this conduct by Rapice constituted retaliatory animus towards Johnson. As stated above, courts have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. Instead, a plaintiff must produce "some tangible proof to demonstrate

that [his] version of what occurred was not imaginary." *Id* quoting *Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994)).

Plaintiff attempted to show that the speech was a motivating factor in the suspension and termination of plaintiff by offering "evidence" that there was some connection between Rapice and former defendant in this case the former mayor Joseph Ganim. There are two significant problems with this claim. First, the law of this case is that Ganim had nothing to do with the suspension and termination of the plaintiff. (Please see *Johnson v. Ganim, et al*, 342 F.3d 105 (2003) where the court affirmed the district court's ruling granting summary judgment for Joseph Ganim on the ground that there was no evidence to support plaintiff's allegations that Ganim was involved in the termination and suspension of the plaintiff). Any "evidence" offered by the plaintiff to show that Ganim was in some way involved in the suspension and termination of plaintiff should not have been considered by the jury because the law of this case is that Ganim had no involvement with the termination and suspension of plaintiff.

Secondly, arguably plaintiff could have shown that Rapice retaliated against plaintiff because Rapice was a Ganim supporter and that even if the former mayor

did not direct him to act Rapice could have acted on his own because he did not like anyone who criticized the mayor or his administration. However, the plaintiff presented no evidence to support such a claim. The "evidence" consisted of the fact that Rapice was a city employee under the Ganim Administration and that therefore, because he was such he must have been tied up in some fashion with the corruption scandal that brought down the former mayor and/or because he was a city employee that Rapice would not stand for any criticisms of the mayor or his administration. Under this scenario any employee employed by the City under the Ganim Administration was therefore, corrupt and/or would act to prevent any criticisms of the administration just because he or she was employed by the City. This court does not need an explanation of how ridiculous such a claim is. Also, plaintiff attempted to show that one of Ganim's associates (Paul Pinto) in some way used a credit card with Rapice's name on it as evidence that Rapice retaliated against the plaintiff because of the speech. This evidence is woefully insufficient to establish retaliation. Evidence that might prove that Rapice retaliated against the plaintiff because of the speech is totally lacking in this case. For example: What relationship did Rapice have with Ganim? Did he meet with him on a regular basis? Was he actually hired by Ganim? Did he ever vote for him or campaign for him? etc. There is no evidence

to support any of these things other then Rapice was a city employee and the credit card testimony (which was explained by Rapice through his testimony) to suggest that Rapice would want to retaliate against Johnson because of any criticisms directed toward the mayor or his administration.

Additionally, in this area judgment as a matter of law should enter for the defendant Rapice based on the allegations of plaintiff's complaint and the fact that those allegations were not and could not have been proven in court. Specifically, plaintiff's complaint alleges that the defendant Rapice, acting with the express authorization of defendant Joseph Ganim and on behalf of the defendant City of Bridgeport, suspended the Plaintiff without pay for a period of thirty days because of the two subject letters written and sent to city officials. Moreover, the plaintiff alleges that with the "authorization of defendant Ganim" and in the name of the defendant City of Bridgeport, defendant Rapice terminated the plaintiff's municipal employment. The allegations of the Complaint are that the former defendant in this case, Joseph Ganim, expressly authorized and directed Rapice to act. In this case, there was no evidence presented to the jury to support the claim that Joseph Ganim expressly authorized Rapice to act and it is submitted to this court that no such evidence could be proffered because the law of this case is that Ganim had nothing to do with the

suspension and termination of the plaintiff. This is so because as stated above, the District Court entered summary judgment for Defendant Joseph Ganim and the City of Bridgeport, which was affirmed, by the appeals court. *Johnson v. Ganim, et al*, 342 F.3d 105 (2003). By necessary implication, the Plaintiff could not have proven the allegations of his complaint because of the mere fact that his complaint alleges that it was Ganim who expressly authorized Rapice to act in the suspension and termination of the Plaintiff. If, in fact, as the District Court and the Second Circuit have ruled, there is absolutely no evidence to support Plaintiff's claim that Ganim had anything to do with his suspension and termination, it was impossible for the plaintiff to prove his allegations of his complaint. Therefore, as mandated under Rule 50, if there is no legally sufficient evidentiary basis or a reasonable basis for a reasonable jury to find for the plaintiff on the issue as alleged in a party's pleading this court may determine the issue for Defendant Rapice

Additionally, judgment should enter for Rapice because it was clear by the evidence that Rapice was not the decision maker in the termination and suspension of Johnson. The evidence clearly established that Director of Labor Relations Edmund Winterbottom made those decisions. He testified that he, after consulting with Rapice, made the decision to suspend and terminate Johnson. Rapice testified

that after his January 26, 1999 meeting with Johnson he immediately met with Winterbottom and Winterbottom ordered the suspension. Moreover, as both Rapice and Winterbottom testified it was Winterbottom who made the decision to terminate Johnson after consultation with Rapice. The actor here was Winterbottom not Rapice and judgment should enter on this ground alone.

### B. Pickering Balancing

Even if this Court believes that plaintiff has submitted enough evidence to support his claims under a $\S$ 1983 cause of action, the Court should enter judgment on behalf of the Defendant Rapice based on the cases of *Pickering v. Board of Education*, 391 U.S. 563 (1968); *Jeffries v. Harleston*, 52 F 3d 9 (2nd Cir. 1995) and *Johnson v. Ganim, et al*, 342 F.3d 114 (2nd Cir. 2003) because under these cases there is no legally sufficient evidentiary basis or legal basis to sustain Plaintiff's claim. In *Pickering*, a government employer may take an adverse employment action against a public employee for speech and matters of public concern if (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for such disruption outweighs the value of the speech; (3) the employer

took the adverse employment action not in retaliation for the employee's speech but because of the potential for disruption.

The courts have held that while as a general rule the test is a matter of law for the District Court to apply, where there are questions of fact relevant to that application, the Second Circuit has made known that "we can envision cases in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the District Court's application of the *Pickering* balancing test." *Johnson v. Ganim, et al*, 342 F.3d 114 (2nd Cir. 2003). From these decisions the court can, if it chooses to do so, allow the jury to determine factual issues applicable to *Pickering.* As permitted the Court submitted special interrogatories to the jury in order to assist it in determining the legal issues that pertain to *Pickering.* In responding to the special interrogatories the jury appeared to agree that Rapice did not prove by a preponderance of the evidence that it was reasonable for him to predict that the January 7, 1999 letter would cause or had the potential to cause disruption in the workplace but it did find that Rapice proved by a preponderance of the evidence that the plaintiff's suspension and termination were not in retaliation for the plaintiff's January 7, 1999

11

letter but because of the actual disruption or the potential for disruption in the workplace. It is submitted to this court that the findings of the jury on these issues are inconsistent. On the one hand, the jury found that it was not reasonable for Rapice to predict that the letter would cause or had the potential to cause disruption in the workplace but, on the other hand, it found that Rapice proved that the suspension and termination were not in retaliation for the plaintiff's letter but because of the actual disruption or potential for disruption in the workplace. Because of these inconsistencies and because the ultimate determination of whether *Pickering* balancing test has been satisfied is a question of law for the Court, this Court must decide this issue based on the evidence presented at trial.

    The first element of *Pickering* is whether the employer's prediction of the disruption in the workplace is reasonable. The answer to this question must be in the affirmative. This is so because the evidence was overwhelming through the testimony of Rapice and Labor Relations Director Edmund Winterbottom that it was reasonable for them to conclude that the speech would cause disruption. The evidence in this case revealed that the subject letter referenced violence in the workplace and that Rapice and Winterbottom perceived it to be a threat that the plaintiff Johnson would engage in such violence. In fact, Rapice and Labor Relations

Director Edmund Winterbottom both testified that the letter itself <u>did</u> disrupt the workplace, in particular the Office of Labor Relations and the Mayor's office because to them it appeared that Johnson was threatening to engage in violence towards them. Quite frankly, they were worried that he might engage in a violent act towards those two offices. Moreover, Rapice and Winterbottom's prediction that the letter could cause disruption was reasonable because as they testified any act of violence in the workplace is in fact disruptive. Finally, Rapice and Winterbottom's prediction of the potential for disruption in the workplace was cemented by the fact that Johnson refused to explain what he meant by the letter. This is so because, the evidence in this matter clearly established that when Rapice asked Johnson to explain what he met by the letter at the January 26, 1999 hearing between Rapice, Johnson and Johnson's union representative, Rapice testified that Johnson refused to explain what he meant by the letter, and instead he turned his back to his union representative and turned his back three-quarters to Rapice; he, according to the testimony of Rapice, acted bizarre at the meeting mumbling to himself and dared Rapice to fire him. This evidence was not challenged at the trial because when Johnson was asked under cross examination whether it was true that he refused to explain the meaning of the letter he testified that he did not remember. Therefore,

what Rapice and Winterbottom had before them was a letter that they perceived to be a threat; the author of the letter who refused to explain what he meant by it coupled with Johnson's unusual behavior at the January 26, 1999 meeting, all of which Rapice and Winterbottom relied upon when Johnson was suspended. Based on this it was entirely reasonable for both Rapice and Winterbottom to predict that the letter would cause a disruption in the workplace. This is not a case where the employee came to the employer and explained that he was <u>not</u> going to engage in disruption nor is it case where the employee gave a reasonable explanation of what he meant by the subject letter. This court must remember that there is no evidence in this case that at the time Rapice and Winterbottom acted Johnson had given them a reasonable explanation as to the meaning of the letter. Instead, it is a case where an employee writes a letter referencing violence in the workplace, which, can easily be interpreted that it was the author-employee who was going to engage in such violence, and when asked to explain the meaning of the letter the employee refuses to do so. Based on all of this, Rapice and Winterbottom's prediction that the letter could cause disruption in the workplace is, as a matter of law, reasonable and the court should rule as such.

The second element in *Pickering*, that the potential for such disruption outweighs the value of the speech, is clearly satisfied in this case. Simply put, the potential for disruption is the engagement of violence in the workplace. There is no question that committing violence in the workplace disrupts the workplace and that such disruption outweighs any value of the speech at issue in this case. This element of *Pickering* is satisfied.

The last element of *Pickering* is also satisfied in this case. The evidence in this case is overwhelming that Rapice and Winterbottom took the action that they took, not in retaliation for the employee's speech, but because of the potential for disruption in the workplace. As both Rapice and Winterbottom testified, they perceived the January 7, 1999 letter as a threat. As documented above when asked to explain the meaning of the letter Johnson refused to do so and instead acted bizarre at the January 26, 1999 meeting. It also should be noted that at the time the January 7, 1999 letter was written and at the time the matter was turned over to Rapice the evidence in this case established that just 10 months earlier in March 1998 Rapice and Winterbottom were aware that apparently some anonymous employees wrote letters to their supervisors which expressed that they feared the plaintiff because of his conduct. (See Defendants Exhibit 8). The evidence in this

case established that Rapice was assigned to determine who wrote the letters but as he testified he was unable to do so. The point here is that when Rapice and Winterbottom acted to suspend Johnson they also had this in their mind, i.e. anonymous letters expressing fear of Johnson which led to a belief that Johnson could engage in violence in the workplace which obviously could cause a disruption in the workplace. As Rapice and Winterbottom testified the suspension was not the result of any political commentary contained in the letter but was caused by Rapice's and Winterbottom's belief that if allowed back to work there was the potential for disruption namely, Johnson engaging in a violent act in the workplace.

Moreover, the termination of Mr. Johnson was not in retaliation of the speech but once again was because of the potential for disruption in the workplace, i.e. Johnson engaging in a violent act. This was so because after he was suspended from his job and exercising their discretion Rapice and Winterbottom required Johnson to seek professional medical help through the City's Employee Assistance Program (EAP) and required Mr. Johnson to undergo a mental evaluation to determine if he was in fact fit for duty. The evidence in this case established that Johnson went and saw the EAP counselor William Hoey on a few occasions and went for an Independent Medical Exam with Dr. Charles Opshal. Dr. Opshal's report

is Defendant's Exhibit 1. The evidence in this case is that Dr. Opshal conducted an examination of the plaintiff; conducted several tests on the plaintiff; took a detailed history from the plaintiff as outlined in the report and came to the conclusion that Johnson suffered from significant psychological problems and "recommended that Mr. Johnson engage in intensive psychiatric treatment with an eye toward increasing his self-control, decreasing his impulsivity, and helping him to take responsibility for his own behaviors. It is strongly recommended that he complete this treatment before resuming his standard job duties." (See Defendant's Exhibit 1). The evidence in this case indicated that Rapice and Winterbottom relied on Opshal's report. Further, the evidence in this case revealed that after learning of Dr. Opshal's report and recommendations Johnson stopped seeing his EAP counselor and refused to follow through with Dr. Opshal's recommendations. The evidence revealed that at some point Rapice learned that Johnson had been seeing a psychologist Dr. George Steinfeld for a number of years and that Johnson wanted Rapice to contact Dr. Steinfeld to speak with him about Johnson. Rapice reviewed the February 9, 1999 letter from Dr. Steinfeld and spoke with Steinfeld on the phone, and the evidence revealed that the report and conversation did not move Rapice towards disregarding Dr. Opshal's findings because, as Rapice testified, Steinfeld