had not seen Johnson for quite a while (the February 9, 1999 report stated his treatment of Johnson was "sporadic" and Rapice testified that Steinfeld told him he had not seen him for at least a year) and Rapice learned that Steinfeld had never conducted the same psychological test that Opshal conducted. Despite this, Rapice on numerous occasions, offered Johnson the ability to see a new EAP counselor because Johnson did not like William Hoey his EAP counselor, and he offered Johnson the ability to see a new psychologist/psychiatrist of his (Johnson's) choice which the City would pay for to determine if that professional would concur with Opshal's findings. There is no dispute with respect to this evidence. Johnson admitted these offers were made, Rapice testified that they were made and Defendant's Exhibits 4 and 5 support this. Johnson refused these numerous offers. With respect to the third element of *Pickering* it was clearly established that Rapice and Winterbottom terminated Johnson because of the potential of disruption in the workplace. This is so because if he was allowed to return to work without complying with any of the recommendations of Dr. Opshal or at least agreeing to the numerous offers made by Rapice to see another EAP counselor and seek an exam with another doctor of Johnson's choice at City expense, Rapice and Winterbottom were concerned that he would engage in violence in the workplace (and this was

especially reinforced after receiving and reading Dr. Opshal's report). When Johnson repeatedly refused to seek the recommended treatment and refused to accept the numerous offers by Rapice to see another doctor and see an new EAP counselor he was terminated. This was the only option because Rapice and Winterbottom could not allow him to return to work because of the potential for disruption in the workplace, i.e. violence.

It is submitted to this Court that all of the *Pickering* elements have been satisfied and that judgment should enter on behalf of the defendant Rapice.

### C. *Punitive damages*

In this case the jury awarded $1000 in punitive damages. Simply put, there was no evidence presented in this case to justify the award of punitive damages. It cannot be reasonably argued that the conduct of Rapice was a willful or malicious violation of plaintiff's rights; or that his conduct was an intentional act in gross disregard to the plaintiff's rights or that his conduct constituted a reckless disregard by him of whether he was violating Johnson's rights. Punitive damages are permitted in actions filed under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or *callous*

*indifference* to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). There is no evidence in this case that Rapice's conduct was motivated by evil motive or intent or that it was reckless or involved a callous indifference to a federally protected right held by Johnson. In fact, as enumerated above and below, what Rapice did was responsible and he had a good faith belief that Johnson might engage in violence in the workplace.

### D. Qualified Immunity

As argued above and as established at trial, Rapice was not the individual who made the decision to suspend and terminate Mr. Johnson. Instead, Labor Relations Director Edmund Winterbottom made those decisions. However for the purposes of defendant's qualified immunity defense, the argument set forth here assumes that Ron Rapice was the decision maker with respect to the suspension and termination of Johnson.

A public official is entitled to qualified immunity for acts taken in his or her official capacity, unless those acts violated clearly established Constitutional rights of which an objectively reasonable official would have been aware. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211-12 (2nd Cir. 2003). The policy

underpinnings of this doctrine involve "striking a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" <u>Locurto v. Safir</u>, 264 F.3d 154, 162-63 (2d Cir. 2001)(quoting <u>Kaminsky v. Rosenblum</u>, 929 F.2d 922, 924-25 (2d Cir. 1991)). The analysis is three-part. First, the Court must decide whether the plaintiff has alleged a violation of a Constitutional right. Second, the right alleged must have been clearly established at the time of the violation. Finally, the official will receive immunity if his or her actions were objectively reasonable. See <u>Id.</u> at 212. Public officers are shielded from liability for civil damages when performing discretionary duties or functions insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate such clearly established rights. <u>Connecticut ex rel Blumenthal v. Crotty</u> 346 F.3d 84, 101, 102 (2nd Cir. 2003).

1. No Right was "Clearly Established" in this Matter

A right is "clearly established" if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Anderson v. Creighton, 483 U.S. 635, 640, (1987) The unlawfulness of the act must be apparent in light of law existing at the time of the action. See Huminski v. Corsones, 386 F.3d 116, 151 (2nd Cir. 2004). Qualified immunity gives "ample room for mistaken judgment" and protects "all but the plainly incompetent or those who knowingly violate the law." See Sira v. Morton, 380 F.3d 57, 81 (2nd Cir. 2004). This "ample room" exists because public officials should not hesitate to act because they fear individual liability for good faith mistakes in judgment. See Hunter v. Bryant, 502 U.S. 224, 229 (1991).

In the present matter the defendant Ron Rapice is entitled to qualified immunity based on the fact that his conduct did not violate any clearly established constitutional right of which a reasonable person would have known. Granted there is no question that the right of free speech is a clearly established right under the First Amendment of the United States Constitution. However, the operation of whether a clearly established constitutional right was violated depends substantially upon the level of generality at which the relevant "legal rule" is to be identified.

*Anderson v. Creighton, et, al* 483 U.S. 635, 639 (1987). For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus as the *Anderson* court pointed out, there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation, like, in the present case, the right to free speech under the First Amendment *Id.* But as the *Anderson* court held if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow v. Fitzgerald* 403 U.S. 800 (1982). Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Anderson v. Creighton, et, al* 483 U.S. at 639, 640 (1987). *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton, et, al* 483

U.S. at 639, 640 (1987). As the *Anderson* Court held it should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Id.* at 640.

    At the time at issue in the present case it cannot be said that the "contours of the right" was "sufficiently clear" that a reasonable official, in Rapice's position, would understand that what he/she was doing violated the right to free speech. This is so because it was questionable as to whether or not the First Amendment was even applicable. As the evidence in this case established, Rapice believed that the letter at issue was threatening in nature based on its references to violence in the workplace. Obviously, threats are not protected under the First Amendment. *NAACP v. Claiborne Hardware,* 458 U.S. 886, 916 (1982). Rapice therefore, was not clearly violating a constitutional right of which a reasonable person would know because he perceived the letter as a threat. Moreover, Magistrate Judge Thomas Smith, in

24

recommending that summary judgment enter on behalf of Rapice held that the letter was a threat and was not protected speech and United States District Court Judge Dominic Squatrito adopted this holding. See <u>Recommended Ruling on Motion for Summary Judgment</u> <u>Johnson v. Ganim, et al</u> DN 3:00-CV-1556 (DJS) (U. S. District Court District of Conn. August 1, 2002). The ruling on summary judgment was overturned, in part, in <u>Johnson v. Ganim, et al</u>, 342 F.3d 105 (2003). The point here is that two jurists, a federal magistrate judge and a district court judge found that the letter was not protected therefore, it cannot be reasonably argued by the plaintiff nor can it be reasonably held by this court that Rapice's conduct at the time he suspended and terminated the plaintiff violated a clearly established constitutional right of which a reasonable person would have know. If two federal jurists believed that the letter was not protected speech then one cannot reasonably argue that a clear constitutional right existed of which Rapice should have been aware. A right is "clearly established" if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). The right here, the right to free speech, was not clearly established in this case and it was not "sufficiently clear" to Rapice that his conduct

25

violated Johnson's right to free speech because he perceived the letter as a threat and that the plaintiff might engage in a violent act or acts while in the workplace.

2. "Objectively Reasonable"

Moreover, even if it can be argued that a clearly established right was established it was objectively reasonable for Rapice to believe that his acts did not violate that clearly established right. This is so because, the evidence in this matter clearly established that when Rapice asked Johnson to explain what he meant by the letter at the January 26, 1999 hearing between Rapice, Johnson and Johnson's union representative, Rapice testified that Johnson refused to explain what he meant by the letter and instead he turned his back to his union representative and turned his back three-quarters to Rapice; he, according to the testimony of Rapice, acted bizarre at the meeting mumbling to himself and he dared Rapice to fire him. This evidence was not challenged at the trial because when Johnson was asked under cross examination whether it was true that he refused to explain what he meant by the letter he testified that he did not remember. Therefore, what Rapice had before him was a letter that he perceived to be a threat; the author of the letter who refused to explain its meaning coupled with Johnson's unusual behavior at the January 26,

1999 meeting, all of which Rapice relied upon when Johnson was suspended. Exercising his discretion he suspended Mr. Johnson, and required him to seek professional medical help through the City's Employee Assistance Program (EAP) and required Mr. Johnson to undergo a mental evaluation to determine if he was in fact fit for duty. When asked why he did not let Mr. Johnson return to work Rapice testified that it was because of his concern that Johnson might engage in a violent act if he returned to work based on the letter, based on his refusal to explain what he meant by the letter and based on his behavior at the January 26, 1999 meeting. Moreover, the evidence in this case also established that just 10 months earlier in March 1998 Rapice was aware that apparently some anonymous employees wrote letters to their supervisors which expressed that they feared the plaintiff because of his conduct. (See Defendants Exhibit 8). The evidence in this case established that Rapice was assigned to determine who wrote the letters but as he testified he was unable to do so. The point here is that when he acted to suspend Johnson he also had this in his mind, i.e. anonymous letters expressing fear of Johnson. It is submitted to this court that based on the above it was "objectively reasonable" for Rapice to believe that his actions did not violate any clearly established right. What Rapice did was to act to protect what he perceived to be a threat of violence directed

at the workplace and it is submitted to this court that he could do nothing else especially based on the conduct of Johnson when he refused to explain the meaning of the letter at the January 26, 1999 meeting coupled with Johnson's behavior at the meeting. Even if Rapice was incorrect in his assessment, qualified immunity gives "ample room for mistaken judgment" and protects "all but the plainly incompetent or those who knowingly violate the law." Sira v. Morton, 380 F.3d 57, 81 (2nd Cir. 2004). It cannot be said that what Rapice did with respect to the suspension was the actions of a "plainly incompetent" public official or the actions of one who "knowingly violated the law." This "ample room" exists because public officials should not hesitate to act because they fear individual liability for good faith mistakes in judgment. Hunter v. Bryant, 502 U.S. 224, 229 (1991). If Rapice did anything that can be deemed questionable it was only a good faith mistake in judgment.

With respect to the termination of Mr. Johnson it is clear that on this part of the case, Rapice is also entitled to qualified immunity. As Rapice testified in court, he relied on Dr. Opshal's medical report and phone conversation he had with him after he received and read the report in the manner in which he dealt with Mr. Johnson. (See Defendant's Exhibit 1 Opshal report). As Rapice testified he relied on the long detailed history taken by Dr. Opshal that references Johnson's violent past

28

and his inclination towards violence <u>at the time</u> Dr. Opshal examined Mr. Johnson, which was evident by the fact that at the time of the of the examination Johnson's ex-wife had a restraining order against him, and just one year prior to the Opshal exam, Johnson had been involved in fight with another motorist where he punched the other motorists windshield. Moreover, Rapice relied on the part of the report which referenced that Johnson felt that all the phones in City Hall were tapped; that their were surveillance cameras in all the buildings and that Johnson believed that some City officials were trying to poison him as evident by the reference in Dr. Opshal's report that when employees brought him food while he was picketing outside of City Hall that he would give a piece to the squirrels before eating it to make sure it was not poisoned, paranoid conduct that Rapice felt was unusual. Additionally, Rapice relied on the fact that Opshal conducted psychological exams on Johnson, which are referenced in the report. Finally, Rapice relied on the findings of Dr. Opshal, those being that Johnson suffered from:

> paranoid and suspicious thinking, impulsivity and made references to death or violence toward others; that the use of symbolism and references to religious symbols suggest the possibility of thought disorder; that Johnson's history, as well as his current level of impulsivity, certainly raise the question of his propensity to lose control and attempt to harm either himself or someone else; that Johnson's irritability, negativity, and feelings of being demeaned, unappreciated, and rejected by others raise serious questions of antisocial acting out; that Johnson does not accept responsibility for his

behavior and he has a tendency to rationalize excessively and blame his difficulties on other people.

As he testified Rapice relied upon Dr. Opshal's recommendation that Johnson engage in intensive psychiatric treatment with an eye on increasing his self-control, decreasing his impulsivity, and helping him to take responsibility for his own behaviors and that Opshal strongly recommended that Johnson complete the treatment before resuming his job duties. The evidence in this case revealed that Johnson did not want to engage in the recommended treatment proscribed by Dr. Opshal; that he did not like his EAP counselor William Hoey and he stopped seeing him. Further, the evidence revealed that Rapice learned that Johnson had been seeing a psychologist, Dr. George Steinfeld, for a number of years and that Johnson wanted Rapice to contact Dr. Steinfeld to speak with him about Johnson. Rapice reviewed the February 9, 1999 report from Dr. Steinfeld and spoke with Steinfeld on the phone, and the evidence revealed that the report and conversation did not move Rapice towards disregarding Dr. Opshal's findings because as Rapice testified Steinfeld had not seen Johnson for quite a while (the February 9, 1999 letter stated his treatment of Johnson was "sporadic" and Rapice testified that Steinfeld told him he had not seen him for at least a year) and Rapice learned that Steinfeld had never conducted the same psychological tests that Opshal conducted. Despite this, Rapice

on numerous occasions, offered Johnson the ability to see a new EAP counselor because Johnson did not like Hoey, and he offered Johnson the ability to see a new psychologist/psychiatrist of his (Johnson's) choice at City expense to determine if that professional would concur with Opshal's findings. Johnson refused these numerous offers.

As Rapice testified, Johnson was terminated because of his refusal to cooperate in any reasonable manner with the City and Rapice concerning this matter. He refused to explain what he meant by the letter; he refused to follow through with Dr. Opshal's recommendations; he refused Rapice's numerous offers that he see a new EAP counselor and he refused to take up Rapice's numerous offers that he see another doctor of Johnson's choice, which the City would pay for, to determine whether that doctor would agree or disagree with Opshal's findings and recommendations. Rapice testified that he could not allow Johnson back into the workplace given the nature of the January 7 letter and his concern that Johnson might engage in a violent act in the workplace, and as identified above, Johnson's refusal to cooperate in any manner with Opsahl's recommendations and Rapice's numerous offers. Rapice testified that he could not allow Johnson back to work based on the recommendations of Dr. Opshal upon which he relied. Therefore, even

if a right was "clearly established" it was "objectively reasonable" for Rapice to believe that his actions were not violating the clearly established right. Rapice testified that he acted to protect the workplace from a possible violent act. An officer's actions are objectively reasonable if 'officers of reasonable competence could disagree on the legality of the defendants' actions. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) It is submitted to this court that Rapice's actions were objectively reasonable. His actions were based on Dr. Opsahl's findings and recommendation not to allow Johnson back to work until he sought treatment and Johnson's refusal to cooperate in any reasonable manner with seeking treatment and agreeing to the numerous offers made by Rapice.

It is submitted to this Court that based on the above argument Rapice is entitled to qualified immunity and judgment should enter on his behalf.

### III.   CONCLUSION

For the reasons outlined above, judgment should enter on behalf of the defendant Ronald Rapice.

**THE DEFENDANT**

BY: _/s/_

John R. Mitola
Associate City Attorney
999 Broad Street
Bridgeport, CT 06604
Tel. 203-576-7647
Fax 203-576-8252
CT Fed. Bar. No. CT 04017

**CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was mailed, postage prepaid to Attorney John R. Williams 51 Elm Street, New Haven, CT 06510

_/s/_ John R. Mitola

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD JOHNSON | : | CIVIL ACTION NO: |
| Plaintiff, | : | 3:00CV15569 (DJS) |
| vs. | : | |
| | : | |
| JOSEPH GANIM, ET AL. | : | |
| Defendants. | : | August 11, 2005 |

### NOTICE OF MANUAL FILING

Please take notice that the Defendants have manually filed the following document:

**Defendant, Rapice, Rule 50(b) Motion for Judgment After Trial**

This document has not been filed electronically because:

☒ the documents cannot be converted to an electronic format
☐ the electronic file size of the document exceeds 1.5 megabytes
☐ the document is filed under seal pursuant to Local Rule of Civil Procedure 5(d) or Local Rule of Criminal Procedure 57(b)
☐ Defendant is excused from filing this document y Court order
The documents have been manually served on all parties.

THE DEFENDANTS

BY: _____
John R. Mitola
Associate City Attorney
Office Of The City Attorney
999 Broad Street
Bridgeport, Connecticut 06604
Telephone No.: (203) 576-7647
CT FED BAR NO.: 04017

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 11th day of August, 2005, to: John R. Williams, Esq., 51 Elm Street, New Haven, CT  06510.

_____
John R. Mitola
Commissioner of the Superior Court